U.S. DISTRICT COURT – N.D. OF N.Y.
FILED
Aug 07 - 2025
John M. Domurad, Clerk

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the
Northern District of New York

**UNITED STATES OF AMERICA**
**v.**
**ALEXANDER SUVOROV**

Case No. 1:25-MJ-221 (PJE)

**Defendant**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of March, 2022 – April, 2023 in the county of -------------------- in the Northern District of New York the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. §§ 1956(a)(2)(A) & (h) | Conspiracy to Commit International Promotional Money Laundering |
| 18 U.S.C. §§ 371, 554 & 2 | Conspiracy to Commit Outbound Smuggling |
| 50 U.S.C. §§ 4819(a)(1), (a)(2)(A), (a)(2)(B), (a)(2)(D) & (b) | Conspiracy to Violate the Export Control Reform Act |

This criminal complaint is based on these facts:
Click here to enter text.

☒ Continued on the attached sheet.

*Complainant's signature*

FBI Special Agent Carson Walker

*Printed name and title*

Attested to by the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Date: 8/7/2025

*Judge's signature*

City and State: Albany, New York

Hon. Paul J. Evangelista, U.S. Magistrate Judge

*Printed name and title*

**Affidavit in Support of a Criminal Complaint**

I, Carson Walker, Federal Bureau of Investigation (FBI) Special Agent, being duly sworn, depose and state:

1. I make this affidavit in support of an application for a criminal complaint and arrest warrant charging Alexander Suvorov (SUVOROV) with the following offenses:

   a. Conspiracy to commit international promotional money laundering, 18 U.S.C. § 1956(a)(2)(A) & (h);

   b. Conspiracy to commit outbound smuggling, 18 U.S.C. §§ 371, 554 & 2; and

   c. Conspiracy to violate the Export Control Reform Act, 50 U.S.C. §§ 4819(a)(1), (a)(2)(A), (a)(2)(B), (a)(2)(D) & (b).

2. There is probable cause to conclude that between about March 2022 and about April 2023, SUVOROV knowingly and intentionally conspired with others known and unknown to transport, transmit, and transfer a monetary instrument and funds to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, to wit, smuggling goods from the United States in violation of 18 U.S.C. § 554.

3. There is also probable cause to conclude that between about March 2022 and about April 2023, SUVOROV knowingly and intentionally conspired with others known and unknown to fraudulently and knowingly cause to be exported from the United States merchandise, articles, and objects contrary to laws and regulations of the United States, to wit, to cause companies in the United States to export electronic components subject to the Export Administration Regulations (EAR), 15 C.F.R. Parts 730–744, from the United States to the Russian Federation (Russia) in violation of 50 U.S.C. § 4819(a)(2)(A), and that SUVOROV and others known and unknown committed the overt acts set forth in paragraphs 8–41 of this

complaint, among others, in furtherance of the conspiracy and to effect the illegal objects thereof.

4. There is further probable cause to conclude that between about March 2022 and about April 2023, SUVOROV willfully conspired and acted in concert with others known and unknown for the purpose of exporting and causing to be exported, directly or indirectly, from the United States to Russia, electronic components subject to the EAR without a license from the U.S. Department of Commerce Bureau of Industry and Security (BIS).

5. I have been a Special Agent with the FBI since August 2020 and am currently assigned to a counterintelligence squad. I have been personally involved in this investigation. During my time with the FBI, I have participated in investigations of, among other things, wire fraud, bank fraud, smuggling, violations of the Export Control Reform Act. Through my training, education, and experience, I have become familiar with the structure, hierarchies, and organization of organized criminal groups and complex criminal networks, and the manner which such groups and networks operate to engage in various fraudulent schemes, money laundering, and other offenses, and the language, coded or otherwise, used by the members and associates of such groups and networks.

6. The information in this affidavit was obtained during this investigation, including through my personal observations, my review of federal agency reports, other documents, and other evidence, and from information I received from other law enforcement officers, including BIS agents. This affidavit is submitted for the limited purpose of seeking a criminal complaint and arrest warrant and does not include every fact known to me about this investigation. Dates listed in this affidavit are "on or about" or "in or around," and quantities and amounts are

approximate. For communications in Russian described in this affidavit, I have used an online translation tool to translate the text into English.

**Summary of the Investigation**

7. As detailed below, the FBI and BIS have been investigating an illicit procurement network responsible for smuggling U.S. electronic components out of the United States to Russia. SUVOROV, Infotechnika Employee 1, and NPC Topaz Director 1 are Russian nationals who held primary roles in the procurement network. One of the procurement network's main goals was to fraudulently obtain dual-use electronic components — that is, electronic components with both civilian and military applications — from U.S. companies for shipment to Russia. SUVOROV's primary role in the procurement network was to maintain front companies based in Hong Kong, including GS Group Limited (GS Group), which the procurement network used to order electronic components from U.S. companies in an effort to conceal that the end users of the components were in Russia, to transship the components from the U.S. companies to the end users in Russia, and to send payments to the U.S. companies in an effort to conceal that the funds came from Russia.

**Facts Supporting Probable Cause**

***Background on SUVOROV and Other Individuals and Entities***

8. SUVOROV is a 50-year-old Russian national residing in Stockholm, Sweden.[1] He was the managing director and principal shareholder of GS Group, an electronic components retailer located at an address on Lam Hing Street in Hong Kong (the Lam Hing Street Address).

---

[1] Upon information and belief, Suvorov has never visited the United States. Upon information and additional belief, the schemes in which Alexander Suvorov is alleged to have committed began outside of the United States and ended within the borders of the United States by virtue of the purchases and exports of the electronic components described in this affidavit. Your Affiant anticipates an arrest of the defendant in Sweden, the extradition of the defendant from Sweden to

9. Infotechnika Employee 1 was a Russian national who worked for OOO Infotechnika (Infotechnika), an electronics seller based in Saint Petersburg, Russia. Infotechnika shared the same physical address as NPO Electronic Systems, a Russian electronics reseller. The Department of Commerce added NPO Electronic Systems to the BIS Entity List in March 2022, after Russia's invasion of Ukraine, for having been involved in, contributed to, or otherwise supported the Russian security services, military and defense sectors, and military or defense research and development efforts.[2] 87 Fed. Reg. 13141, 13142 (Mar. 9, 2022).

10. NPC Topaz Director 1 was a Russian national who worked as a director at NPC Topaz and the supervisor of Infotechnika Employee 1. NPC Topaz Director 1 was also a 25% shareholder of NPC Granat, a Russian company in the electronics production industry. The Department of Commerce added NPC Granat to the BIS Entity List in 2016 for operating in Russia's defense or related materiel sector. 81 Fed. Reg. 61595, 61596 (Sept. 7, 2016).

***March 2022: At the Request of the Russian Buyer, SUVOROV Agrees to Falsify an End-Use Certificate to Submit to U.S. Company 1***

11. In March 2022, shortly after BIS imposed additional license requirements for exports to Russia following Russia's invasion of Ukraine, Infotechnika Employee 1 emailed SUVOROV a "Customer Certification of End Use and Export Compliance" from U.S. Company 1, a U.S. electronic components distributor. Infotechnika Employee 1 wrote that U.S. Company 1 had asked for the completed form and that they needed to list "a company that is not Russian."

---

the United States, and the defendant being first brought to the Northern District of New York for purposes of an initial appearance. *See* 18 U.S.C. § 3238; *United States v. Miller*, 808 F.3d 607, 619-21 (2d Cir. 2015).

[2] The Entity List identifies entities for which there is reasonable cause to believe have been involved, are involved, or pose a significant risk of being or becoming involved in activities contrary to U.S. national security or foreign policy interests. *See* 15 C.F.R. Part 744 Supp. No. 4. A license is required to export any item subject to the EAR to an entity on the Entity List. *See* 15 C.F.R. §§ 744.11, 744.16.

Infotechnika Employee 1 asked SUVOROV to sign the form on behalf of GS Group. The attached form stated: "This is to certify that GS GROUP LIMITED will be the recipient of items to be delivered by [U.S. Company 1] and to certify that GS GROUP LIMITED will not transfer, sell or re-export such items ...." The same day, SUVOROV forwarded the form to a GS Group employee and wrote, "please sign."

***May 2022: GS Group Orders Controlled Components from U.S. Company 2***

12. In May 2022, a U.S.-based electronic component distributor (U.S. Company 2) received a purchase order for three electronic components (Order -48). The order listed both the "Bill To" and "Ship To" party as GS Group at the Lam Hing Street Address in Hong Kong.

13. Order -48 included six flash memory integrated circuits, which are classified under Export Control Classification Number (ECCN) 3A991.b.1.a. A BIS license was required to export these circuits to Russia, but not to Hong Kong. *See* 15 C.F.R. § 746.8(a)(1).

14. U.S. Company 2 created an invoice for Order -48 with an invoice number ending in -567 (Invoice -567).

15. On May 11, 2022, GS Group wired about $19,500 from its account at a bank in Hong Kong (Hong Kong Bank 1) to U.S. Company 2's bank account in the U.S. According to U.S. Company 2's records, this payment was for multiple orders, including Invoice -567.

16. In July 2022, U.S. Company 2 emailed GS Group that Order -48 had been shipped to GS Group at the Lam Hing Street Address in Hong Kong. The email listed the quantity of each electronic component that had been ordered and the quantity that had been shipped, including the six flash memory integrated circuits. For the other components ordered, the quantity shipped was listed as zero, likely indicating that U.S. Company 2 did not have the components in stock. SUVOROV later received an email with an attachment showing that the

shipment with the components from Invoice -567 from U.S. Company 2 arrived at the Lam Hing Street Address on July 18, 2022.

***June 2022: At the Request of the Russian Buyer, GS Group Orders More Controlled Components from U.S. Company 2***

17. In June 2022, Infotechnika Employee 1 emailed a GS Group employee, copying SUVOROV, asking GS Group to order 45 electronic components from U.S. Company 2 and writing that the money for the order (Order 29) had already been sent to GS Group. Attached was a spreadsheet with the manufacturer, part number, stock code, quantity, and price of each component. The spreadsheet listed the "Bill to" party as Infotechnika at an address in Saint Petersburg, Russia.

18. Order 29 included 7 wireless amplifiers, which are classified under ECCN 5A991.b. According to the manufacturer's website, these amplifiers can be used in defense communications and radar. Order 29 also included electronic components with an HTS code beginning with 853890. A BIS license was required to export these components to Russia, but not to Hong Kong. *See* 15 C.F.R. § 746.8(a)(1), (5); 15 C.F.R. Part 746, Supp. No. 4.

19. Two days later, the GS Group employee responded to Infotechnika Employee 1, copying SUVOROV, agreeing to place Order 29 and attaching a proforma invoice from GS Group with the electronic components, quantities, and prices that Infotechnika Employee 1 had requested. The proforma invoice listed the "Bill to" party as Infotechnika at an address in Saint Petersburg, Russia.

20. Four days later, U.S. Company 2 received a purchase order from GS Group for the electronic components in Order 29. The purchase order listed both the "Bill To" and "Ship To" party as GS Group at the Lam Hing Street Address in Hong Kong. U.S. Company 2 created an invoice for Order 29 with an invoice number ending in -484 (Invoice -484).

21. The next day, Infotechnika Employee 1 emailed SUVOROV, copying NPC Topaz Director 1, to confirm that Order 29 had been placed.

22. A week later, Infotechnika Employee 1 emailed SUVOROV, copying NPC Topaz Director 1, that Order 29 had been paid for but not yet shipped.

23. On July 7, 2022, GS Group wired about $23,500 from its Hong Kong Bank 1 account to U.S. Company 2's U.S. bank account. According to U.S. Company 2's records, this payment was for multiple orders, including Invoice -484.

24. On July 16, 2022, U.S. Company 2 emailed GS Group that Order 29 had been shipped to GS Group at the Lam Hing Street Address in Hong Kong. The email listed the quantity of each electronic component that had been ordered and the quantity that had been shipped. For six of the components ordered, the quantity shipped was listed as zero, and for two other components, the quantity shipped was listed as less than the quantity ordered, likely indicating that U.S. Company 2 did not have enough components in stock. SUVOROV later received an email with an attachment showing that the shipment with the components from Invoice -484 from U.S. Company 2 arrived at the Lam Hing Street Address on July 21, 2022.

***June 2022: GS Group Orders a Third Batch of Controlled Components from U.S. Company 2***

25. In June 2022, U.S. Company 2 received a purchase order for 35 electronic components (Order 7). The order listed both the "Bill To" and "Ship To" party as GS Group at the Lam Hing Street Address in Hong Kong.

26. Order 7 included 40 integrated circuit transceivers, which are classified under ECCN 5A991.b.1. Order 7 also included components with HTS codes beginning with 853890 and 854370. A BIS license was required to export these components to Russia, but not to Hong Kong. *See* 15 C.F.R. § 746.8(a)(1), (5); 15 C.F.R. Part 746, Supp. No. 4.

27. U.S. Company 2 created an invoice for Order 7 with an invoice number ending in -407 (Invoice -407).

28. According to U.S. Company 2's records, the July 7, 2022 wire of about $23,500 from GS Group's Hong Kong Bank 1 account to U.S. Company 2's U.S. bank account described above in paragraph 23 was also for Invoice -407.

29. In July 2022, U.S. Company 2 emailed GS Group that Order 7 had been shipped to GS Group at the Lam Hing Street Address in Hong Kong. The email listed the quantity of each electronic component that had been ordered and the quantity that had been shipped. For eight of the components ordered, the quantity shipped was listed as zero, likely indicating that U.S. Company 2 did not have the components in stock. SUVOROV later received an email with an attachment showing that the shipment with the components from Invoice -407 from U.S. Company 2 arrived at the Lam Hing Street Address on July 21, 2022.

***July 2022: At the Request of the Russian Buyer, GS Group Orders a Fourth Batch of Controlled Components from U.S. Company 2***

30. In July 2022, Infotechnika Employee 1 emailed a GS Group employee, copying SUVOROV, asking GS Group to order 34 electronic components from U.S. Company 2 (Order 38). Attached was a spreadsheet with the manufacturer, part number, stock code, quantity, and price of each component. The spreadsheet listed the "Bill to" party as Infotechnika at an address in Saint Petersburg, Russia.

31. Order 38 included 100 untethered dead reckoning modules, which are classified under ECCN 7A994. According to the manufacturer's website, these components, which contain an accelerometer and gyroscope, can be used to determine the position of a vehicle, aircraft, or drone in real-time without GPS or other outside signals. Order 38 also included two microprocessor development boards, which are classified under ECCN 3A991.a.2 and which can

be used in electronic manufacturing to develop and test hardware and software. Order 38 also included electronic components that were classified under other ECCNs or had HTS codes beginning with 854720 or 853890. A BIS license was required to export these components to Russia, but not to Hong Kong. *See* 15 C.F.R. § 746.8(a)(1), (5); 15 C.F.R. Part 746, Supp. No. 4.

32. The same day, the GS Group employee responded to Infotechnika Employee 1, copying SUVOROV, agreeing to place Order 38 and attaching a proforma invoice from GS Group with the 34 electronic components, quantities, and prices that Infotechnika Employee 1 had requested. The proforma invoice listed the "Bill to" party as Infotechnika at an address in Saint Petersburg, Russia.

33. The next day, U.S. Company 2 received a purchase order from GS Group for the 34 electronic components in Order 38. The purchase order listed both the "Bill To" and "Ship To" party as GS Group at the Lam Hing Street Address in Hong Kong. U.S. Company 2 created an invoice for Order 38 with an invoice number ending in -662 (Invoice -662).

34. On July 13, 2022, GS Group wired about $29,000 from its Hong Kong Bank 1 account to U.S. Company 2's U.S. bank account. According to U.S. Company 2's records, this payment was for multiple orders, including Invoice -662.

35. Two days later, U.S. Company 2 emailed GS Group that Order 38 had been shipped to GS Group at the Lam Hing Address in Hong Kong. The email listed the quantity of each electronic component that had been ordered and the quantity that had been shipped. For eight of the 34 components ordered, the quantity shipped was listed as zero, likely indicating that U.S. Company 2 did not have those components in stock. SUVOROV later received an email with an attachment showing that the shipment with the components from Invoice -662 from U.S. Company 2 arrived at the Lam Hing Street Address on July 18, 2022.

***August 2022: GS Group Ships Controlled Components from All Four Orders to "Our Customer" in Russia***

36. Infotechnika Employee 1 emailed SUVOROV an air waybill for a shipment of 18 cartons of electronic components from GS Group at the Lam Hing Street Address in Hong Kong to NPC Topaz in Russia on August 5, 2022. SUVOROV later received an email showing that this air waybill was for the components from Invoices -567, -484, -407, and -662 that GS Group had received from U.S. Company 2, among other orders. According to a BIS licensing history check in November 2023, neither SUVOROV nor GS Group applied for or obtained a BIS license to export or reexport these or any other electronic components to Russia.

37. In September 2022, Infotechnika Employee 1 emailed SUVOROV about several money transfers, with conversions from U.S. dollars to Chinese yuan renminbi (CNY). Infotechnika Employee 1 described one transfer, for CNY 4,089,913, as being "mine" and from "Topaz," and asked if SUVOROV had received it. SUVOROV replied that nothing had arrived yet.

38. The next day, Hong Kong Bank 1 emailed SUVOROV that a payment to GS Group's account for CNY 4,089,913 from NPC Topaz was on hold. Hong Kong Bank 1 asked SUVOROV about the purpose of the payment and requested supporting documentation. SUVOROV replied with three GS Group invoices for "our customer Topaz" and wrote that the payment was "for the goods shipped to the customer." The GS Group invoices listed both the "Bill to" and "Ship to" party as NPC Topaz in Russia. One GS Group invoice, which was for multiple orders that GS Group had placed on behalf of NPC Topaz, listed numerous components that GS Group had ordered from U.S. Company 2, including: (a) the flash memory integrated circuits, with the same part number, that GS Group had received from U.S. Company 2 in Order -48 and Invoice -567; (b) 36 of the components, with the same part numbers, that GS

Group had received from U.S. Company 2 in Order 29 and Invoice -484; (c) 19 of the components, with the same part numbers, that GS Group had received from U.S. Company 2 in Order 7 and Invoice -407; and (d) 22 of the components, with the same part numbers, that GS Group had received from U.S. Company 2 in Order 38 and Invoice -662.

***October 2022: SUVOROV Creates a New Company "for Further Activities" in Russia "In Case There Are Going to Be New Sanctions"***

39. In October 2022, SUVOROV emailed a Hong Kong business services company about opening a bank account for a new company he had recently registered called Unitech Impex Ltd (Unitech). SUVOROV wrote that Unitech had not signed any contracts yet and was "[j]ust [a] fresh company for further activities."

40. In April 2023, SUVOROV emailed the business services company a completed, signed "Know Your Customer" questionnaire for Unitech. The questionnaire listed SUVOROV as Unitech's sole director, shareholder, ultimate beneficial owner, and bank account signatory; listed SUVOROV's source of wealth as "[i]ncome from the sale of electronic components"; and listed Unitech's address as the Lam Hing Street Address. It listed Unitech's primary business activity as selling electronic components and stated that the source of funds for the bank account that Unitech sought to open as "[m]ainly from Russia." The questionnaire listed U.S. Company 2 as one of Unitech's suppliers and two Russian companies as Unitech's buyers.

41. Later that month, the business services company emailed SUVOROV a list of background questions from a prospective bank. In response, SUVOROV explained why he had created Unitech and was seeking to open a bank account: "The reason to open the account for Unitech is that we want to start [to] separate the business with Russia into one distinct flow. So, Unitech is going to be the supplier for [the buyer] in Russia and, in case, there are going to be

new sanctions or embargo, it will be easy to close one company [*sic*] without influence to the whole business, which is not connected to Russia."

**Request for a Criminal Complaint and Arrest Warrant**

42. Based on my experience, training, and the totality of circumstances in the above information, there is probable cause to believe that:

a. between about March 2022 and about April 2023, SUVOROV knowingly and intentionally conspired with others known and unknown to transport, transmit, and transfer a monetary instrument and funds to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, to wit, smuggling goods from the United States in violation of 18 U.S.C. § 554;

b. between about March 2022 and about April 2023, SUVOROV knowingly and intentionally conspired with others known and unknown to fraudulently and knowingly cause to be exported from the United States merchandise, articles, and objects contrary to laws and regulations of the United States, to wit, to cause companies in the United States to export electronic components subject to the EAR from the United States to Russia in violation of 50 U.S.C. § 4819(a)(2)(A), and that SUVOROV and others known and unknown committed the overt acts set forth in paragraphs 8–41 of this complaint, among others, in furtherance of the conspiracy and to effect the illegal objects thereof; and

c. between about March 2022 and about April 2023, SUVOROV willfully conspired and acted in concert with others known and unknown for the purpose of exporting

and causing to be exported, directly or indirectly, from the United States to Russia, electronic components subject to the EAR without a license from BIS.

WHEREFORE, I respectfully request that the Court issue a complaint and corresponding arrest warrant charging Alexander SUVOROV with conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(a)(2)(A) & (h); conspiracy to commit outbound smuggling in violation of 18 U.S.C. §§ 371, 554 & 2; and conspiracy to violate the Export Control Reform Act, 50 U.S.C. §§ 4819(a)(1), (a)(2)(A), (a)(2)(B), (a)(2)(D) & (b).

Respectfully submitted,
Attested to by the Affiant

Carson Walker
Special Agent
Federal Bureau of Investigation

I, the Honorable Paul J. Evangelista, United States Magistrate Judge, hereby acknowledge that this affidavit was attested by the affiant by telephone on August 7, 2025, in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure:

Hon. Paul J. Evangelista
United States Magistrate Judge